IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GENA M. ABRAMOV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:11-CV-440-D |
| VS. | § | |
| | § | |
| OTIS ELEVATOR COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed diversity case, the court must decide whether it can exercise general

personal jurisdiction over one defendant and whether to transfer the case for the convenience

of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a).  For the

reasons that follow, the court grants one defendant's motion to dismiss for lack of *in*

*personam* jurisdiction and grants the other defendant's motion to transfer the case to the

District of Nevada.

I

This is an action by plaintiff Gena M. Abramov ("Abramov") against defendants

Desert Palace Inc. ("Desert Palace"), d/b/a Caesars Palace Hotel & Casino ("Caesars

Palace"), and Otis Elevator Company ("Otis") arising from a trip and fall at Caesars Palace

in Paradise, Nevada.[1]  According to Abramov, she tripped and fell, injuring her right knee,

_____

[1]Abramov originally filed suit in Texas state court against Otis, Caesars Palace Realty
Corp. ("Caesars Realty"), and Caesars Entertainment Corporation ("Caesars Entertainment").
Defendants jointly removed the case to this court based on diversity jurisdiction.  Abramov

when she entered an elevator that was not level with the ground.  She alleges that Caesars Palace and Otis are liable on claims for negligence (including gross negligence), and she sues to recover, *inter alia*, exemplary or punitive damages.

Abramov is a Texas citizen.  Desert Palace is a Nevada corporation with its principal place of business in Nevada, and it owns and operates Caesars Palace.  Otis is a New Jersey corporation with its principal place of business in Connecticut, and Abramov alleges that it owned and serviced the elevator in question.

Desert Palace moves under Fed. R. Civ. P. 12(b)(2) to dismiss the action against it for lack of *in personam* jurisdiction.[2]  In its motion, Desert Palace adopted the arguments and authorities that former defendants Caesars Palace Realty Corp. and Caesars Entertainment Corporation presented in their motion and supplemental motion to dismiss.  In response to Desert Palace's motion, Abramov requested limited discovery on the issue of general jurisdiction.  The court granted the motion and permitted Abramov to conduct this discovery and file a supplemental response brief no later than August 26, 2011.  Because the time for Abramov to file the supplemental response brief has elapsed, the motion is ripe for decision.

Otis does not challenge the court's exercise of *in personam* jurisdiction over it.  Otis moves, as does Desert Palace in the alternative, to transfer this case to the District of Nevada

---

later filed a first amended complaint substituting Desert Palace in place of Caesars Realty and Caesars Entertainment

[2]Desert Palace also moves for summary judgment based on the statute of limitations. The court does not reach this motion.

under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

## II

The court turns first to Desert Palace's motion to dismiss.

## A

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The determination whether a federal district court has personal jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.* Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Desert Palace would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a nonresident defendant when:

(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."  To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).  A defendant has minimum contacts with the forum if its contacts support either general or specific jurisdiction.  *Mink*, 190 F.3d at 336.  In this case, Abramov does not assert that specific jurisdiction exists over Desert Palace.  The court will therefore determine only whether Abramov has established that the court has general jurisdiction.  General jurisdiction exists "when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'"  *Id.*  It is difficult to establish continuous and systematic contacts because this requires "extensive contacts between a defendant and a forum," and even repeated contacts may not be enough.  *Johnston v. Multidata Sys. Int'l*, 523 F.3d 602, 609 (5th Cir. 2008).

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."  *Berry v. Lee*, 428 F.Supp.2d 546, 557 (N.D. Tex. 2006) (Fitzwater, J.) (quoting *WRR Indus., Inc. v. Prologis*,

2006 WL 247894, at *4 (N.D. Tex. Feb. 2, 2006) (Lindsay, J.)).

When, as here, the court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper. *Latshaw*, 167 F.3d at 211. For purposes of determining whether a *prima facie* case for personal jurisdiction exists, the court must accept as true all uncontroverted allegations in the plaintiff's complaint and resolve in the plaintiff's favor all conflicts between the facts contained in the parties' affidavits. *Id.* Although this standard is liberal, it "does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

B

Abramov has failed to make a *prima facie* showing that the court can exercise general jurisdiction over Desert Palace. Regarding personal jurisdiction over Desert Palace, Abramov merely alleges in her first amended complaint ("complaint") that Desert Palace is a Nevada corporation that has been served through its Nevada registered agent. And although the court permitted Abramov to conduct jurisdictional discovery for purposes of establishing that Desert Palace had engaged in pervasive, systematic, and continuous local advertising,[3] she did not submit any such discovery. "[V]ague and overgeneralized assertions

---

[3]Abramov relied on the following cases from the Eastern District of Texas: *Morgan v. Coushatta Tribe of Indians of Louisiana*, 214 F.R.D. 202, 206 (E.D. Tex. 2001), and *Gorman v. Grand Casino of Louisiana, Inc.-Coushatta,* 1 F.Supp.2d 656, 659 (E.D. Tex. 1998).

that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.

Moreover, Desert Palace has presented uncontradicted evidence that supports a contrary finding.[4]  Michael Grey, Vice President of Finance, avers that Desert Palace does not, *inter alia*, own or operate a business, have or rent property, employ, or have a business operating as Desert Palace's alter ego in Texas.  Bonnie Gilmour, Vice President of Marketing for Caesars Entertainment for the Las Vegas region, lists the Desert Palace national marketing initiatives that were intended to attract customers from all states to the Nevada resort.  Her evidence does not support Abramov's suggestion that Desert Palace engages in local advertising in the state of Texas.

Because Abramov has not established that Desert Palace has sufficient minimum contacts with Texas to support the exercise of general personal jurisdiction, the court need not consider whether exercising jurisdiction over Desert Palace would offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211.

Desert Palace's motion to dismiss is granted, and Abramov's suit against Desert Palace is dismissed without prejudice by Rule 54(b) judgment filed today.

---

[4]Although Abramov objects to the qualifications of Desert Palace's affiants and argues that the affidavits do not negate the existence of personal jurisdiction, she neither contradicts the affidavits nor offers evidence of her own.  Accordingly, the court need not resolve in her favor any conflicts between the parties' affidavits.

III

The court turns next to Otis' motion to transfer the action to the District of Nevada.[5]

A

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.,* 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Pinnacle Label, Inc. v. Spinnaker Coating, LLC,* 2009 WL 3805798, at *7 (N.D. Tex. Nov. 12, 2009) (Fitzwater, C.J.) (citing *Fowler v. Broussard,* 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)). Moreover,

_____

[5]Because the court has dismissed Abramov's suit against Desert Palace, it will not consider the arguments that Desert Palace presented in support of its alternative motion to transfer. *See, e.g., In re Volkswagen AG,* 371 F.3d 201, 204 (5th Cir. 2004) (per curiam) (holding that the term "parties" in § 1404(a) "contemplate[s] consideration of the parties . . . in all claims and controversies properly joined in a proceeding"); *Sivertson v. Clinton,* 2011 WL 4100958, at *6 n.6 (N.D. Tex. 2011 Sept. 14, 2011) (Fitzwater, C.J.) (declining to consider convenience of potential party and his witnesses because potential party had not yet been joined).

> [t]he plaintiff's choice of venue is . . . entitled to deference, and
> therefore the party seeking transfer has the burden to show good
> cause for the transfer. The burden on the movant is
> "significant," and for a transfer to be granted, the transferee
> venue must be "clearly more convenient than the venue chosen
> by the plaintiff."

*Id.* at *8 (alterations in original).  "When the movant demonstrates that the transferee venue is clearly more convenient, . . . it has shown good cause and the district court should therefore grant the transfer."  *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*") (citing *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) (per curiam)); *see also Volkswagen II,* 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue.").  In deciding whether to transfer the case, the court then evaluates "a number of private and public interest factors, none of which are given dispositive weight."  *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to
> sources of proof; (2) the availability of compulsory process to
> secure the attendance of witnesses; (3) the cost of attendance for
> willing witnesses; and (4) all other practical problems that make
> trial of a case easy, expeditious and inexpensive. The public
> concerns include: (1) the administrative difficulties flowing
> from court congestion; (2) the local interest in having localized
> interests decided at home; (3) the familiarity of the forum with

the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. Otis must establish "good cause" for transferring the case, meaning that, "in order to support its claim for a transfer, [it] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (brackets in original) (quoting § 1404(a)).

B

The court addresses first whether the judicial district to which transfer is sought—here, the District of Nevada—is a district in which this suit could have been filed. The court holds, and the parties do not dispute, that Abramov could have brought this action in the District of Nevada. Venue for diversity cases is governed by 28 U.S.C. § 1391(a), which provides, in relevant part, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Because the events giving rise to Abramov's claim occurred in Nevada, the District of Nevada is a proper venue.

C

The court next considers the private interest factors.

1

The first private interest factor examines the relative ease of access to sources of proof. "The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *2 (N.D. Tex. Mar. 24, 2009) (Lynn, J.); *see also Volkswagen II*, 545 F.3d at 316 ("[T]he sources of proof requirement is a meaningful factor in the analysis.").

Otis asserts that the elevator in question is located in Nevada and notes that the parties' attorneys and experts will need to inspect the elevator. Otis also refers to records regarding the installation, inspection, and maintenance of the elevator that are maintained at Otis' office in Nevada. Abramov responds that these records can just as easily be transported to Texas on discs or in boxes.

Abramov relies on medical records located in Texas. Otis argues that it will be easier to transport these records to Nevada because knee injuries normally generate a relatively small amount of records, and it is customary for law firms to use medical record services to obtain and send medical records.[6]

---

[6]Otis also asserts that, other than Abramov, all other witnesses are located in Nevada, including, employees, any non-party witnesses, and immediate medical providers, if any.

Because the relevant documents are located in both Texas and Nevada and it will be necessary for one party to transport documents regardless which venue is selected, the court does not perceive an advantage in either forum. *See, e.g., Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.,* 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (concluding that factor was neutral because documents were located in both venues).

To the extent that Otis is arguing that trial in the venue where the elevator is located will allow the trier of fact to examine the elevator, Otis must demonstrate why a premises view is necessary. *See Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.,* 2009 WL 464953, at *3 (N.D. Tex. Feb. 24, 2009) (Fish, J.) (holding that movant failed to provide any explanation of why site visit or physical examination of evidence was necessary).[7] "[I]t is not clear in these days of advanced technology why a physical viewing of the [premises]

---

The court deems this argument to be more pertinent to its consideration of the second and third private interest factors.

The parties disagree about the "primary issue" in this case. Abramov contends that the primary issue is the nature and extent of her injuries and damages, and that the case should be litigated in this forum because the court is located near this proof. Otis contests Abramov's characterization of the primary issue, contending that this assumes Otis' liability; it avers that the primary issue centers on the condition and maintenance of the elevator, and that the pertinent proof is located in Nevada. In evaluating these competing arguments, the court will examine the difficulty in transporting both types of evidence.

[7]An older test for deciding a motion to transfer under § 1404(a) included as a factor "the accessibility of the premises to jury view." *Baxa Corp. v. ForHealth Techs., Inc.*, 2006 WL 680503, at *1 (N.D. Tex. Mar. 15, 2006) (Fitzwater, J.) (listing possibility of premises view as factor in deciding whether to transfer case). Although this factor is not explicitly part of the current test, it can still be considered in appropriate cases because the factors of the current test, while "appropriate for most transfer cases," are "not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315.

- 11 -

would be necessary," and Otis does not assert any grounds to show it will be necessary.  *See Snaza v. Howard Johnson Franchise Sys., Inc.,* 2008 WL 5383155, at *13 (N.D. Tex. Dec. 24, 2008) (O'Connor, J.) (deciding motion to dismiss for *forum non conveniens*).

The court therefore finds that the first factor is neutral.

2

The second private interest factor concerns the availability of compulsory process over witnesses.  The court concludes that this factor is neutral because, although both parties list intended witnesses, there is nothing to suggest that either side's witnesses would be unwilling to testify.  *See, e.g., Sivertson v. Clinton*, 2011 WL 4100958, at *5 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (concluding that second private interest factor was neutral because defendant failed to identify witnesses for whom compulsory process would be needed).  In reciting its list of intended witnesses, Otis fails to specify whether compulsory process will be necessary to secure their attendance.  Although Abramov argues that it will be burdensome and expensive for her healthcare witnesses to testify in Nevada, she does not show that they are unwilling to testify there.[8]

_____

[8]If Abramov is concerned about the burden and expense of securing the testimony of these witnesses, she can consider calling them by deposition.  *See, e.g., Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 398 (S.D. Tex. 2011) (noting in motion to transfer analysis that evidence from non-party witnesses could be obtained by deposition); *Fancher v. S. Towing Co.*, 2010 WL 3982242, at *3 (E.D. La. Oct. 8, 2010) (noting, as a reason for only slightly weighing factor in favor of transfer, that "trials do often involve physician testimony via deposition").

3

The third private interest factor examines the difficulty and cost for willing witnesses to attend court proceedings.  The availability and convenience of witnesses is the most significant factor in deciding a § 1404(a) motion to transfer.  *See, e.g., Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

Otis contends that it is "[a] fair conclusion . . . that any employees, including former employees, . . . non-party witnesses, witnesses connected to Otis, witnesses to the incident in question, and witnesses that may have knowledge of immediate health care provided to [Abramov]" are located in Nevada.[9]  D. Br. 6.  Otis also lists a number of employees whom it intends to call as witnesses.  According to Otis,

> Defendants will need testimony from the Otis employees who installed the elevator to rebut the Plaintiff's negligence in installation claim; the route mechanic to describe the routine maintenance as well as repairs made to the elevator; the mechanic who investigated the incident [to] provide his account of the mechanical state the elevator was in at the time he arrived after the incident; a person from each Defendant with knowledge of the contracts related to the elevator [to] testify to the terms and responsibilities of each party under the contract; the property manager [to] offer testimony relevant to Defendant['s] failure to post warnings and properly maintain the elevator; security guards at the property [to] provide information pertaining to any similar instances . . . of the elevator malfunctioning; other employees [who] may have knowledge of the incident or the functioning of the elevator in general.

---

[9]Although Otis makes these arguments when addressing the second private interest factor, the court deems it relevant to the third private interest factor.

Ds. Reply Br. 4-5.  In other words, Otis essentially relies on two types of witnesses: general categories of witnesses, such as "non-party witnesses" or "witnesses to the incident," and employees identified by job title.

Abramov argues that it will be difficult to secure the attendance of her Texas-based healthcare providers even though she will be paying for their travel, because travel to Nevada is inconvenient and they will be outside the subpoena range of the Nevada court.  Otis responds that Abramov can easily obtain their testimony by videotaped deposition, and that their testimony is more amenable to presentation by deposition since it will likely stay the same, whereas the testimony of the experts and other witnesses will likely evolve until trial.

The court concludes that this factor neutral.  Otis has not met its burden of showing that the difficulty and cost of witness attendance weighs in favor of transfer.  As for its general categories of witnesses, Otis has failed to "specify clearly . . . the key witnesses to be called and their location and [to] make a general statement of what their testimony will cover."  *Sivertson*, 2011 WL 4100958, at *6 (alteration in original) (quoting 15 Charles A. Wright, et al., *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007)); *see also Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to satisfy its burden under this factor by not providing the name, address, or proposed testimony of a single witness).  Otis does not identify the names of the witnesses or provide a general statement as to their testimony.  *See Metromedia Steakhouses*, 2008 WL 794533, at *3 (concluding that defendants did not meet their burden under this factor by asserting that "nonparty witnesses reside in [transferee district]" because,

*inter alia*, it did not identify them). Although it may be a "fair conclusion" that these witnesses reside in Nevada, this conclusory assertion is insufficient. *See id.* (stating, as another reason for rejecting defendants' assertion of "nonparty witnesses resid[ing] in [transferee district]," that defendant did not offer evidence of their location). Otis' reliance on its intended employee witnesses is also misplaced because it is well-established that the convenience of nonparty witnesses is accorded greater weight than the convenience of party witnesses. *See, e.g., Santellano v. The City of Goldthwaite*, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, C.J.). Otis' motion is also too vague regarding the names, locations, and descriptions of their anticipated testimony. *See, e.g., Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2009 WL 2634860, at *5-6 (N.D. Tex. Aug. 26, 2009) (Fitzwater, C.J.) (rejecting defendants' assertions that they intended to call, for example, "[a]ll of the people involved in the design . . . of . . . product [in dispute]," because it did not identify witnesses by name and address).

In asserting the convenience of her healthcare providers residing in Texas, Abramov does not specify their names and a general description of their testimony. Although Abramov does not bear the burden of proof, the absence of such specificity precludes the court from finding that this factor weighs in her favor rather than that it is merely neutral.

4

The fourth private interest factor considers the practical problems that make trial easy, expeditious, and inexpensive. The court finds this factor to be neutral.

Otis and Abramov discuss the location of counsel and the ease of acquiring new counsel in Nevada, but the location of counsel is not relevant to the court's transfer determination. *See, e.g., Santellano*, 2011 WL 1429080, at *2 n.3, and *3. The parties recount their arguments concerning ease of access to sources of proof, which has already been considered in analyzing the first private interest factor. It is also undisputed that transfer would not cause significant delay or prejudice.

D

The court now turns to the public interest factors.

1

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues. The court finds that this factor is neutral because neither party has presented arguments or evidence that pertain to this factor. *See, e.g., Sivertson*, 2011 WL 4100958, at *7 (declining to examine first public interest factor because parties did not present arguments or evidence).

2

The second public interest factor concerns the local interest in having localized interests decided at home. Otis argues that Nevada has a significant interest because all of the alleged events occurred in Nevada, and it maintains its principal place of business in

Nevada.  Abramov responds that this factor should be considered neutral because the accident affected only her, and she resides in Texas.

The court holds that this factor strongly favors transferring the case.  Abramov's suit is based on conduct that occurred wholly within Nevada, and it is well-established that "[t]his factor generally favors the venue where the acts giving rise to the lawsuit occurred." *See Metromedia Steakhouses*, 2008 WL 794533, at *3.  Nevada residents have the most significant interest in regulating the conduct of a company that provides elevator service in their state to invitees of a commercial establishment.  Morever, Abramov is seeking exemplary or punitive damages.  Under Nevada law,[10] punitive damages "are designed to punish and deter a defendant's culpable conduct and act as a means for the *community* to express outrage and distaste for such conduct."  *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 252 (Nev. 2008) (en banc) (emphasis added).  The relevant community in this case is composed of Nevada residents, not residents of the state from which the plaintiff hails.  And even if a Texas court has some interest in protecting Texas residents from suffering personal injuries when visiting other states, the residents of the state where the incident occurred—particularly in a premises-type case—have the most significant interest.

---

[10]As the court notes *infra* at § III(D)(3), Nevada law will likely govern this lawsuit.

3

The third public interest factor examines the familiarity of the forum with the law that will govern the case.  The parties recognize that because this court's jurisdiction is based on diversity of citizenship, the forum state's choice of law rules apply.  *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) (holding that federal court exercising diversity jurisdiction applies the choice of law rules of forum state).  Under Texas choice of law rules, the law of the state with the most significant relationship to the controversy governs in a tort action.  *See, e.g., Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979).  Therefore, the parties do not dispute the likelihood that Nevada law will govern this suit.

Otis argues that it will be inconvenient for this court to apply Nevada's unique rules and regulations regarding elevators.  Abramov contends that there is nothing novel about this personal injury suit and that courts often apply the law of other states.  Although this court is capable of applying Nevada law, a court sitting in Nevada has greater familiarity with Nevada law.  *See, e.g., Metromedia Steakhouses,* 2008 WL 794533, at *4 (concluding that although court can apply Puerto Rico law, court in Puerto Rico would be more familiar with the law).  Accordingly, the court holds that this factor weighs in favor of transfer.

4

The fourth public interest factor concerns the avoidance of unnecessary problems of conflict of laws.  The court concludes that this factor is neutral; neither party suggests any problems concerning the conflict of laws between Texas and Nevada.  *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.,* 2011 WL 197897, at *7 (E.D. La. Jan. 20,

2011) (concluding that this factor did not weigh in favor of transfer because there was no indication of conflict between Alabama and Louisiana law).

E

Considering the private and public interest factors *in toto*, the court holds that Otis has met its burden of clearly demonstrating that this case should be transferred for the convenience of parties and witnesses and in the interest of justice.  Essentially, this is a case in which the private interest factors are neutral but two public interest factors point strongly to the District of Nevada as the forum in which the case should be litigated.  This is a personal injury action that asserts premises-type claims arising from an incident involving an elevator located in Nevada.  The lawsuit will likely be governed by Nevada law.  And because Abramov seeks punitive damages, a jury from the community will have the responsibility of deciding (assuming Otis and/or Desert Palace[11] is liable) whether and in what amount punitive damages should be awarded to "express outrage and distaste for such conduct."  Nevada's local interest in deciding this case is far greater than is any interest that Texas has.  And while Abramov received medical care in her home state of Texas, this case is about an incident that occurred in Nevada and is otherwise centered there.

Accordingly, the court grants Otis' motion to transfer venue under § 1404(a).

---

[11]Although the court is dismissing Abramov's action against Desert Palace, the dismissal is without prejudice, and she can still bring suit against Desert Palace in a forum where the court can exercise *in personam* jurisdiction over Desert Palace, provided her suit is not time-barred.

\*   \*   \*

For the reasons explained, the court grants Desert Palace's May 12, 2011 motion to dismiss for lack of personal jurisdiction and dismisses the action against Desert Palace without prejudice by Rule 54(b) judgment filed today.  The court grants Otis' March 11, 2011 motion to transfer venue.  Abramov's action against Otis is transferred to the District of Nevada.  The clerk of court is directed to effect the transfer according to the usual procedure.

**SO ORDERED.**

October 25, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE